**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

(1) CHOCTAW TOWN SQUARE, LLC,

Plaintiff/Counter-Defendant/
Third Party Plaintiff,

vs.

(1) THE CITY OF CHOCTAW, OKLAHOMA, (2) THE CHOCTAW UTILITIES AUTHORITY, (3) BANCFIRST, AN OKLAHOMA BANKING ASSOCIATION, TRUSTEE, (4) TED POOL, Individually, (5) RAY VINCENT, Individually, and (6) TED POOL and RAY VINCENT d/b/a POOL & VINCENT; and (7) ROGER NELSON, Individually

Defendants/Counter-Claimants,

(8) RANDY ROSS, Individually,

Defendant/
Third Party Defendant.

(1) THE CITY OF CHOCTAW, OKLAHOMA; and
(2) THE CHOCTAW UTILITIES AUTHORITY,

Counterclaim Plaintiffs,

vs.

(1) AK ENTERPRISE OF NWA, INC.;
(2) BBT INVESTMENTS, LLC;
(3) APRIL BLACKABY;
(4) KURT BLACKABY;
(5) ELDON BLACKABY;
(6) SHERRY BLACKABY;

Case No. CIV-13-118-F

(7) THE ELDON R. BLACKABY AND SHERRY L. BLACKABY JOINT REVOCABLE TRUST DATED JANUARY 15, 2002;
(8) CIVIL DESIGN CONSULTANTS, LLC;
(9) KRIS COMPTON;
(10) K. VAUGHN KNIGHT;
(11) JOSH KYLES; and
(12) KYLES FAMILY REVOCABLE TRUST,

Counterclaim Defendants.

**AK ENTERPRISES OF NWA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE CITY OF CHOCTAW AND THE CHOCTAW UTILITIES AUTHORITY AND BRIEF IN SUPPORT**

COMES NOW Counterclaim Defendant, AK Enterprises of NWA, Inc. ("AK"), and for its Motion for Partial Summary Judgment, respectfully seeks the dismissal of the claims for breach of contract (Counterclaim, Dkt. 165, Fourth Claim for Relief) and tortious breach of contract (Fifth Claim for Relief) alleged by Defendants, City of Choctaw and Choctaw Utilities Authority (collectively, "City"). AK also seeks the partial dismissal of City's claim for fraud relating to invoices (Eighth Claim for Relief). In support of this Motion, AK submits the following:

## SUMMARY JUDGMENT STANDARD

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588

(1986) (citing U.S. v. Diebold, Inc. 369 U.S. 654, 655 (1962)). Courts have held that "[a]n issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id*; (citing *Anderson*, 477 U.S. 248).

Here, for City's claims to survive summary judgment, it must make an evidentiary showing that it can establish each of the claims' essential elements at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (holding "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . .") *Id.* at 322. Thus, City must present something more than a "metaphysical doubt as to the material facts." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 261 (quoting Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp., 475 U.S. at 588). A "mere scintilla" of evidence in support of City's position is insufficient. 477 U.S. at 252.

Moreover, the summary judgment analysis must incorporate "any heightened evidentiary standard required under the applicable substantive law." *Revell v. Hoffman*, 309 F.3d 1228, 1232 (10th Cir. 2002), *cert. denied*, 540 U.S. 818 (2003). Here, City has alleged a count of actual fraud. *See* Counterclaim, Eighth Claim for Relief. Actual fraud must be proven by clear and convincing evidence, and the Court must review these claims "through the prism of the [clear and convincing] burden" on a summary judgment.

*See Griffin v. Griffin*, 2004 OK CIV APP, ¶ 17, 94 P.3d 96, 99; *Pine Tel. Co. Inc. v. Alcatel-Lucent USA Inc.*, No. 14-7012 (10th Cir. Mar. 27, 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 254; *See also Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1244 (10th Cir. 1990) (ruling that summary judgment on a fraud claim was proper "[b]ecause of the high standard of proof and [plaintiff's] failure to establish each element of fraud"). *Id.*

## UNDISPUTED MATERIAL FACTS

1. It is undisputed Choctaw Town Square, LLC ("CTS") entered into an agreement with City to develop a district known as the Choctaw Town Square.

2. It is undisputed AK entered into an agreement with CTS to serve as the contractor for the Choctaw Town Square development. Exhibit 1, Contract between AK and CTS.

3. It is undisputed AK's contract with CTS incorporates by reference the 1987 Edition of AIA Document A201 ("Document A201"). Exhibit 1, ¶¶ 1.2, 9.3.2. Document A201 is attached hereto as Exhibit 2.

4. It is undisputed AK had no direct contractual relationship with City.

## ARGUMENT AND AUTHORITY

### I. CITY'S FOURTH CLAIM FOR RELIEF SHOULD BE DISMISSED BECAUSE CITY IS NOT A THIRD-PARTY BENEFICIARY OF THE CTS/AK CONTRACT.

City alleges that, as the owner of the Choctaw Town Square property ("Property"), it is a third-party beneficiary to the contract ("Contract") entered into between CTS and AK for the construction of improvements to the Property, and it may therefore "sue AK

for breach of any contractual obligations AK assumed." Counterclaim (Dkt. 165), ¶¶ 71, 78. A copy of the Contract is attached hereto as Exhibit 1. Document A201, which the Contract incorporates by reference, Exhibit 1, ¶¶ 1.2, 9.3.2, is attached hereto as Exhibit 2.[1] In support of its claim, City points out that "the 'owner' of the Property, which AK knew to be [City], is expressly referenced throughout both the [Contract] and [Document A201]." Counterclaim, ¶ 71.

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." 15 O.S. § 29 (2015). Oklahoma Courts have interpreted the term "expressly" to mean "'directly' as distinguished from impliedly or indirectly." *Oil Capital Racing Ass'n, Inc. v. Tulsa Speedway, Inc.*, 1981 OK CIV APP 20, 628 P.2d 1176, 1179.

> Thus, the phrase 'a contract, made expressly for the benefit of a third person' refers to a promise made directly for the third party's benefit. The benefit cannot be enforced if it has to be implied from the terms of the contract or results incidentally from its performance.

*Id*. A beneficiary need be neither specifically named in the contract nor identifiable at the time the agreement is made if "it appears it was expressly made for the benefit of a class of persons to which group the party seeking enforcement belongs." *Id*. However, "*[n]o obligation may be imposed upon a promissor in favor of a third party* if the contract expressly relieves that promissor of such liability to that third party." *May v. Mid-Century Ins. Co.*, 2006 OK 100, ¶ 24, 151 P.3d 132, 140 (emphasis added). Therefore, "[o]ne to

---

[1] The Contract and Document A201 were also attached to the Counterclaim as Exhibits 1 and 2, respectively.

whom, by the express terms of a contract, no obligation is due from its promissor, cannot qualify for the status of an intended or implied third-party beneficiary." *Id.* at 141.

> As a general proposition, the determining factor as to the right of a third party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts.

*G. A. Mosites Co. of Fort Worth, Inc. v. Aetna Cas. & Sur. Co.*, 1976 OK 7, 545 P.2d 746, 749 (quoting 17 Am.Jur.2d, Contracts § 304). "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 15 O.S. § 152 (2015).

In the present matter, it is clear that the contracting parties, CTS and AK, intended that *no third persons* should receive an enforceable benefit under the Contract. As noted, the Contract incorporates by reference Document A201. Exhibit 1, ¶¶ 1.2, 9.3.2. Document A201, in turn, provides that the "Contract Documents shall not be construed to create a contractual relationship *of any kind* . . . between any persons or entities other than the *Owner and Contractor*."[2] Exhibit 2, ¶ 1.1.2 (emphasis added).

City claims to be the party identified by the term "Owner," Counterclaim, ¶ 71, and, ordinarily, it would be correct in this assertion. However, in the present situation, the Contract and Document A201 were adapted from their normal "owner-contractor"

---

[2] Document A201 defines "Contract Documents" as "the Agreement between Owner and Contractor . . . Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. Exhibit 2, ¶ 1.1.1.

application for use in the "developer-contractor" context. This is evident in the text of both documents. For example, the Contract provides:

> *The Developer* [CTS] *shall compensate the Contractor* [AK] *for the Construction Phase services as follows:*
>
> 5.1 *Compensation*
>
> 5.1.1 *For the Contractor's performance . . . the Owner* shall pay the Contractor . . . .

Exhibit 1, Art. 5 (underlining added).

> 8.2 *INSURANCE REQUIRED OF THE OWNER*
>
> *During both phases of the Project, the Developer shall purchase and maintain liability and property insurance . . . .*

*Id.*, ¶ 8.2 (underlining added).

> *10.1 TERMINATION PRIOR TO THE OWNER'S APPROVAL OF THE CONTROL ESTIMATE*
>
> *10.1.1 Prior to the Developer's approval of the Control Estimate, the Developer may terminate this Contract at any time without cause . . . .*

*Id.*, ¶¶ 10.1-10.1.1 (underlining added).

> *10.2 TERMINATION SUBSEQUENT TO THE OWNER'S APPROVAL OF THE CONTROL ESTIMATE*
>
> *10.2.1 Subsequent to the Developer's approval of the Control Estimate, the Contract may be terminated as provided . . . .*

*Id.*, ¶¶ 10.2-10.2.1 (underlining added). As the foregoing examples illustrate, the use of the term "Owner" was a mistake—a failure to replace "Owner" with "Developer" in every instance. When through mistake or accident, a written contract "fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of

the writing disregarded." 15 O.S. § 156; *See also* 15 O.S. § 157 ("[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."); 15 O.S. § 169 ("[w]ords in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected.").

Further supporting this conclusion is the fact that neither the Contract nor Document A201 defines "Owner" as City. In fact, the Contract provides no definition for the term,[3] while Document A201 defines it as "the person or entity identified as such in the Agreement . . . ." Exhibit 2, ¶ 2.1.1. The "Agreement," in turn, is the "Agreement between Owner and Contractor." *Id*., ¶ 1.1.1. There is no such agreement between City and AK, so City cannot be the "Owner." There is, however, an agreement—the Contract—between CTS and AK, so it is clear that the term "Owner" here refers to CTS.

Therefore, as demonstrated above, the contract documents expressly disclaim an intention to confer enforceable benefits on persons other than CTS and AK, and City's claim for breach of contract therefore must fail.

## II. CITY'S FIFTH CLAIM FOR RELIEF SHOULD BE DISMISSED.

On March 4, 2015, the Court entered an order (Dkt. 307) on AK's motion to dismiss (Dkt. 221). Citing *Embry v. Innovative Aftermarket Systems, L.P.*, 2010 OK 82, 247 P.3d 1158, the Court determined that City had failed to show the "special

---

[3] The Contract does state that "[u]nless otherwise noted, the terms used in this Agreement shall have the same meaning as those in [Document A201]." Exhibit 1, ¶ 9.3.1. However, the Contract's failure to define "Owner," when it defines both "Developer" and "Contractor," Exhibit 1, at 1, is further proof that the term's use was inadvertent.

relationship" required to sustain a claim for breach of duty of good faith and fair dealing because there were no facts to show that the contract at issue was an adhesion contract that eliminated risk. Order, at 6. Consequently, the Court dismissed the claim with prejudice. *Id*. However, the Court did not dismiss the Fifth Claim for Relief in its entirety because AK's motion did not challenge City's claim for "tortious breach of contract." *Id*. Because "tortious breach of contract" and "breach of duty of good faith and fair dealing" are synonymous under Oklahoma law, AK now respectfully moves that the Fifth Claim for Relief be wholly dismissed. *See, e.g., Rodgers v. Tecumseh Bank*, 1988 OK 36, 756 P.2d 1223, 1225,

## III. CITY'S EIGHTH CLAIM FOR RELIEF SHOULD BE DISMISSED IN PART BECAUSE CITY HAS FAILED TO SHOW IT WAS INJURED BY AK'S ALLEGED FAILURE TO ACT IN CONFORMITY WITH THE LAW.

As part of its fraud claim, City alleges that AK failed to comply with "Oklahoma law." *See* Counterclaim, ¶ 74. *See also id.*, ¶ 77. Specifically, City alleges that AK, a nonresident contractor, failed to give written notice to the Oklahoma Tax Commission, the Oklahoma Employment Security Commission, the Workers' Compensation Court, and the Oklahoma County Assessor before commencing work. *Id*. City alleges further that AK failed to obtain "current employer identification numbers" from the Oklahoma Tax Commission, the Oklahoma Employment Security Commission, the Internal Revenue Service, and the Social Security Administration. *Id*. ¶ 75. City also alleges that AK failed to file a surety bond with the Oklahoma Tax Commission. *Id*. ¶ 76. Finally, City alleges that AK failed to notify City of these "failure[s]" so that "AK could receive

compensation." *Id.* According to City, these "material omissions constitute fraud . . . ." *Id.* ¶ 77.

However, City has failed to demonstrate that it was injured in any way by these alleged instances of non-compliance. Nor can it. The requirements City cites are not intended for its benefit. For example, though non-resident contractors[4] are to give written notice to the Oklahoma Tax Commission and other government entities before commencing work, this is "[t]o the end that the State of Oklahoma and the political subdivisions thereof may receive all taxes due in every instance . . . ." 68 O.S. § 1702. Similarly, before beginning work on contracts in excess of one hundred thousand dollars, nonresident contractors are to file with the Oklahoma Tax Commission a surety bond "not less than three times the tax liability incurred or to be incurred" under the contract, "*payable to the State of Oklahoma*." 68 O.S. § 1703 (emphasis added). Finally, unless the contract requires the services of fewer than three employees, contractors must "have and be able to prove current employer identification numbers issued to them by the Oklahoma Tax Commission" and certain other government agencies. 68 O.S. § 1701.1. However, those awarding the contract "shall not be . . . liable for any penalty resulting from the

[4] A "non-resident contractor" is a contractor "who maintains his principal place of business outside [the State of Oklahoma] or a multi state employer who does not maintain a permanent work force of three or more employees in [the State of Oklahoma]". 68 O.S. § 1701(3). The term "contractor" includes "all prime and general contractors, subcontractors, independent contractors and persons engaged in contract labor who through negotiations or competitive bidding enter into contracts to furnish labor, materials, or both and the required equipment to perform the contract for a fixed price and who in pursuit of independent business undertake a job in whole or in part retaining substantial control of the method and manner of accomplishing the desired result . . . ." 68 O.S. § 1701(1).

contract." 68 O.S. § 1701.1(B). Thus, AK's alleged non-compliance imposes no liability upon City, and City has otherwise failed to identify any injury which the foregoing instances of alleged non-compliance have caused it.

In the absence of an injury, City's claim for fraud must fail with respect to the conduct described above. *See Silver v. Slusher*, 1988 OK 53, 770 P.2d 878, 881 n.8 (stating an action for fraud requires that the "party relying on the false statement suffers damages"). Therefore, the Court must dismiss this portion of City's Counterclaim.

**CONCLUSION**

For the reasons stated above, AK respectfully requests the dismissal of City's claims for breach of contract, tortious breach of contract, and negligent breach of contract. Furthermore, AK respectfully requests the dismissal, in part, of City's claim for fraud relating to invoices. Finally, AK requests all other relief that this Court deems just and equitable.

Respectfully Submitted,
**WALKER, FERGUSON & FERGUSON**

*s/Brian P. Kershaw*______________________

THOMAS G. FERGUSON, JR., OBA #2878
BRIAN P. KERSHAW, OBA #32031
941 East Britton Road
Oklahoma City, Oklahoma 73114
Telephone: (405) 843-8855
Facsimile: (405) 843-8934
Email: tferg@wffatty.com
Email: bkers@wffatty.com
***Attorneys for Counterclaim Defendant***
***AK Enterprise of NWA, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of November, 2015 I electronically transmitted the *AK Enterprises of NWA, Inc.'s Motion for Partial Summary Judgment as to the City of Choctaw and the Choctaw Utilities Authority and Brief in Support* to the Clerk of the Court using the ECF System for filing. Based upon the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Amy J Pierce
Andrew L Walding
Andrew W Lester
Carrie L Vaughn
Chance L Pearson
Charles D Neal , Jr
Courtney Jo Davis Powell
Daniel G Webber , Jr
David R Cordell
Derrick Mark Davidson
George S Corbyn , Jr
Grant M Lucky
Jennifer A Bruner
John J Love
Kenneth Vaughn Knight
Margaret McMorrow-Love
Mark D Coldiron
Hossein Farzaneh
Randy L Goodman
Raymond A Vincent
Richard E Parrish
Ted N Pool
W Asa Hutchinson, III

*s/Brian P. Kershaw*_____________________
Brian P. Kershaw