**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

CHOCTAW TOWN SQUARE, LLC,

Plaintiff/
Counterclaim Defendant/
Third Party Plaintiff,

vs.

THE CITY OF CHOCTAW, OKLAHOMA; THE CHOCTAW UTILITIES AUTHORITY; BANCFIRST; an Oklahoma Banking Association, Trustee; TED POOL, individually; RAY VINCENT, individually; TED POOL and RAY VINCENT d/b/a POOL & VINCENT; and ROGER NELSON, individually,

Defendants/Counter-Claimants,

and

RANDY ROSS, Individually,

Defendant/Third Party Defendant,

THE CITY OF CHOCTAW, OKLAHOMA; and THE CHOCTAW UTILITIES AUTHORITY,

Counterclaim Plaintiffs,

vs.

AK ENTERPRISE OF NWA, INC.; BBT INVESTMENTS, LLC; APRIL BLACKABY; KURT BLACKABY; ELDON BLACKABY; SHERRY BLACKABY; THE ELDON R. BLACKABY AND SHERRY L.

Case No. CIV-13-118-F

BLACKABY JOINT REVOCABLE )
TRUST DATED JANUARY 15, 2002; )
CIVIL DESIGN CONSULTANTS, )
LLC; KRIS COMPTON; K. VAUGHN )
KNIGHT; JOSH KYLES; and )
KYLES FAMILY REVOCABLE )
TRUST, )
)
Counterclaim Defendants. )

**DEFENDANTS THE CITY OF CHOCTAW, OKLAHOMA AND THE CHOCTAW UTILITIES AUTHORITY'S RESPONSE TO AK ENTERPRISE OF NWA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Mark D. Coldiron, OBA#1774
Daniel G. Webber, Jr., OBA#16332
Grant M. Lucky, OBA#17398
Chance L. Pearson, OBA#22269
**RYAN WHALEY COLDIRON JANTZEN PETERS & WEBBER PLLC**
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766

*Attorneys for Defendants and Counterclaimants, The City of Choctaw, Oklahoma and The Choctaw Utilities Authority*

Defendants, The City of Choctaw, Oklahoma and the Choctaw Utilities Authorities (collectively "Choctaw") respectfully submit their response in opposition to Counterclaim Defendant, AK Enterprise of NWA, Inc.'s ("AK") Motion for Partial Summary Judgment ("AK Motion") (*Doc. 454*).  In support hereof, Choctaw would state as follows:

**Response to AK'S Statement of Undisputed Material Facts ("UMF")**

1.	For purposes of AK's Motion for Summary Judgment, Choctaw does not dispute AK's Fact No. 1.

2.	For purposes of AK's Motion for Summary Judgment, Choctaw does not dispute AK's Fact No. 2.

3.	For purposes of AK's Motion for Summary Judgment, Choctaw does not dispute AK's Fact No. 3.

4.	Disputed.  Although Choctaw and AK did not have a written contract, Choctaw has a contractual relationship with AK as a third party beneficiary to the Contract between AK and Choctaw Town Square, L.L.C. ("CTS").

**Statement of Additional Material Facts ("AMF") Precluding Summary Judgment**

1.	CTS acted as the authorized agent of Choctaw to negotiate on Choctaw's behalf and to perform construction of the Choctaw Town Square Development Project, as acknowledged by CTS in the Construction Agreement between CTS and Wal-Mart.  *See Exhibit 1*, Construction Agreement Between Choctaw Town Square, L.L.C. and Wal-Mart Real Estate Business Trust, at p. 1. *See also Exhibit 2*, Agreement and Bill of Sale for Dirt between Wal-Mart and Choctaw Utilities Authority, at p. 1.

2. At all relevant times, AK failed to comply with Oklahoma statutory obligations imposed on nonresident contractors, including obligations to: (1) give written notice to the Oklahoma Tax Commission, the Oklahoma Employment Security Commission, the Workers' Compensation Court, and the Oklahoma County Assessor before commencing work or undertaking performance of contractual duties; (2) give notice to the above-listed entities of every subcontractor working on the project before the subcontractor initiates work; (3) obtain current employer identification numbers issued by the Oklahoma Tax Commission, the Oklahoma Employment Security Commission, the Internal Revenue Service, and the Social Security Administration; and (4) to file with the Oklahoma Tax Commission a surety bond with a surety authorized to do business in Oklahoma in the penal sum of not less than three times the tax liability incurred or to be incurred under its contract payable to the state of Oklahoma under 68 Okla. Stat. §§ 1701.1, 1702, 1703, and 1704. *See Exhibit 3*, AK Responses to Choctaw's Discovery, pp. 12-13.[1]

3. From October, 2010 through January, 2013, Choctaw paid monthly invoices issued by CTS, which included expenses AK incurred in performance of its duties as the general contractor for the Choctaw Town Square Project, in excess of $5,000,000. *See Exhibit 4*, Affidavit of Roger Nelson.

4. Choctaw would not have, unless and until remedied, allowed the use of AK as the general contractor for the Town Square Project or the payment of CTS invoices

[1] Additionally, in its Motion, AK did not dispute that it did not comply with the referenced statutory obligations for nonresident contractors.

(which included expenses incurred by AK)[2] had Choctaw been aware that AK had committed a criminal act by not complying with Oklahoma statutory obligations imposed on nonresident contractors working in Oklahoma. *See Ex. 4*, Nelson Affidavit.

5.      Regardless of Choctaw's risk of liability (or lack thereof) for AK's failures,[3] as a subdivision of the State, Choctaw would not have knowingly chosen to permit AK to perform Project work in disregard of its obligations to the State of Oklahoma, as doing so would be, among other things, a criminal act and inconsistent with Choctaw's contract with CTS.  Further, Choctaw would not have approved the payment of any AK invoice in furtherance of AK's unlawful acts.  Moreover, knowledge of AK's failure to comply with such Oklahoma statutory precepts may have alerted Choctaw as to the fraudulent nature of AK's business practices that damaged Choctaw, which may have been prevented.  *See Ex. 4*, Nelson Affidavit.

6.      AK and CTS did not consider, review, or contemplate the General Conditions of the 1987 Edition of the AIA Document A201 ("Document A201"), and more specifically, Provision 1.1.2(3) of Document A201, before or at the time the parties executed the contract between AK and Choctaw Town Square, L.L.C. for the construction of the Choctaw Town Square Development (the "Contract").  As testified by Eldon Blackaby, corporate representative of AK, neither CTS or AK ever reviewed or discussed A201 *at all* prior to or during the execution of the AK/CTS Contract:

---

[2] CTS invoices consisted entirely of expenses incurred by AK and AK's 15% markup. Thus, such invoices may hereafter by referred to as "AK Invoices."
[3] Under Oklahoma law, a property owner is not required to ascertain whether a contract has complied with the laws relating to nonresident contractors. 68 O.S. § 1701.1(A).

Q. Now, was this a negotiated contract between AK and CTS?

A. It's pretty much our standard management contract, AK's management.

[…]

Q. And so there wasn't any negotiation between AK and CTS?

A. No. It was pretty much our standard agreement and we tried to change the names to fit the project.

[…]

Q. But this 1.2 incorporates into the contract to the extent it's not inconsistent with the contract the general conditions or the 1987 edition of the AIA document A201. Do you know what that document is?

A. No, I don't.

[…]

Q. So would it be fair to say when this contract was signed you didn't know what that document said?

A. No. General condition -- general conditions I assume, so --

Q. But did you know what those conditions were?

A. No.

*See Exhibit 5*, 30(b)(6) Deposition of Eldon Blackaby, p. 56, lns. 12-22; p. 69, ln. 16 – p. 70, ln. 8.

7. With respect to construction work on the Choctaw Town Square Development Project, CTS was acting in furtherance of Choctaw's interests, as admitted by Eldon Blackaby:

Q. CTS was acting in the interest of the City. Correct?

A. Correct.

*See Ex. 5*, p. 68, lns. 4-7.

**Standard**

Fed.R.Civ.P. 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "An issue is genuine 'if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.' An issue of fact is material 'if under the substantive law it is essential to the proper disposition of the claim.'" *Savant Homes, Inc. v. Collins*, 15-1115, 2016 WL 25576, at *2 (10th Cir. Jan. 4, 2016) (internal citations omitted).

> The moving party bears the initial responsibility of presenting evidence to show the absence of a genuine issue of material fact. In seeking summary judgment, the moving party must initiate the process by averring an absence of evidence to support the nonmoving party's case. [T]he movant need . . . only point to an absence of evidence to support the non-movant's claim. The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial. If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. If the movant carries this initial burden, the nonmovant . . . must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. Before summary judgment will be granted it must be clear what the truth is and any doubt as to the existence of a genuine issue of material fact will be resolved against the movant.

*Arabalo v. City of Denver*, 14-1259, 2015 WL 5235740, at *8-9 (10th Cir. Sept. 9, 2015) (internal citations omitted). In considering a motion for summary judgment, all inferences must be drawn in favor of Choctaw, as the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984). As demonstrated herein, AK has failed to satisfy its burden under

Federal Rule of Civil Procedure Rule 56 and thereby the Court should deny its motion for summary judgment.

## ARGUMENT AND AUTHORITY

### I. The Court Should not Grant Summary Judgment on Choctaw's Third Party Beneficiary Breach of Contract Claim (Choctaw's Fourth Claim for Relief).

AK contends that Choctaw's third party beneficiary breach of contract claim against AK should be dismissed. Choctaw has asserted a breach of contract claim against AK based on Choctaw's status as a third party beneficiary to the contract between AK and CTS for the construction of the Choctaw Town Square Development (the "Contract"). *Doc. 165*, Fourth Claim for Relief. AK argues that because the Contract incorporates Document A201, which provides that "the contract documents shall not be construed to create a contractual relationship of any kind … (3) between any persons or entities other than the *Owner and Contractor*," (hereinafter referred to as "Provision 1.1.2(3)") (*See AK Motion*, Ex. 2, at Article 1.1.2), the contracting parties intended that no third person should receive an enforceable benefit under the Contract. *See AK Motion*, at 4-8 (emphasis added). Further, AK asserts that use of the term "Owner" in Article 1.1.2 was inadvertent and that the parties actually intended "Owner" to mean "Developer," or CTS. To support this contention, AK argues, without submitting any evidence, that the Contract and Document A201 were adapted from their normal owner-contractor application for use in the developer-contractor context, asserting that the parties replaced the term "Owner" with the "Developer" throughout the Contract, except for a few inadvertent oversights where the term "Owner" was mistakenly left unchanged. *See AK Motion*, at 6-8.

A contract made expressly for the benefit of a third person may be enforced by such third person. *See* 15 Okla. Stat. § 29. "Moreover, it is not necessary that the third party beneficiaries be specifically named in the contract or be identifiable at the time the pact is made if it appears it was expressly made for the benefit of a class of persons to which group the party seeking enforcement belongs." *Oil Capital Racing Ass'n, Inc. v. Tulsa Speedway, Inc.* 1981 OK CIV APP 20, 628 P.2d 1176, 1179. Although Document A201 does indeed contain the above-cited language, that provision does not eliminate the clear contractual benefit conferred on Choctaw and does not preclude Choctaw from asserting its enforceable rights under the Contract. First, although AK claims that the Contract intended to altogether replace the term "Owner" with "Developer," AK does not – and cannot – identify any provisions *within Document A201* that reveals the parties intended "Owner" to mean "Developer" within the context of Document A201. *AMF No. 6*. In fact, nowhere in Document A201 does it appear that the parties made any attempt to – or had the intent to – replace "Owner" with "Developer." Crucially, although AK contends that the parties intended the explicit language of Provision 1.1.2(3) to read differently than it does, AK has provided no evidentiary support whatsoever for this allegation. In order for the Court to rule in AK's favor on its Motion with respect to this issue, the alleged fact that the parties' intended the word "Owner" to mean "Developer" in Provision 1.1.2(3) would have to be undisputed. Not only does AK *not* list this as an undisputed material fact in its Motion, it is indeed a disputed fact and thus AK's Motion with respect to this claim must be denied.

Secondly, Document A201 is a form document that purports to limit the contractual relationship between the *Owner and Contractor*, and thus assumes a set of factual

circumstances that simply does not exist here since there was no written contract directly between the owner and contractor. Therefore, Document A201's Provision 1.1.2(3) is wholly inapplicable to the circumstances at issue in this case. Moreover, considering the facts surrounding this execution of the Contract, it becomes clear that this provision was never intended to restrict Choctaw from enforcing a benefit: As testified by Eldon Blackaby, corporate representative of AK, neither CTS nor AK[4] ever reviewed or discussed A201 *at all* prior to or during the execution of the AK/CTS Contract:

> Q. Now, was this a negotiated contract between AK and CTS?
>
> A. It's pretty much our standard management contract, AK's management.
>
> […]
>
> Q. And so there wasn't any negotiation between AK and CTS?
>
> A. No. It was pretty much our standard agreement and we tried to change the names to fit the project.
>
> […]
>
> Q. But this 1.2 incorporates into the contract to the extent it's not inconsistent with the contract the general conditions or the 1987 edition of the AIA document A201. Do you know what that document is?
>
> A. No, I don't.
>
> […]

---

[4] As indicated by Eldon Blackaby in his deposition as the corporate representative for AK, AK and CTS are essentially the same company:

> Q. Does AK plan on filing a breach of contract action against CTS?
> A. At this point, no, probably not.
> Q. Well, would it really make sense for you to sue yourself?
> A. That's exactly why we haven't done it.

*See Ex. 5*, Blackaby 30(b)(6) Depo., p. 39, lns. 3-8.

Q. So would it be fair to say when this contract was signed you didn't know what that document said?

A. No. General condition -- general conditions I assume, so --

Q. But did you know what those conditions were?

A. No.

*See Ex. 5,* Blackaby 30(b)(6) Depo., p. 56, lns. 12-22; p. 69, ln. 16 – p. 70, ln. 8. *AMF No. 6*. In fact, in asserting this claim, Choctaw had to locate Document A201 *on the internet*, as it was neither in Choctaw's records, nor produced by AK or CTS in response to relevant discovery requests. Clearly, Provision 1.1.2(3) – and Document A201 as a whole – was never even contemplated by the parties to the Contract. Therefore, to find that the intent behind Document A201's Provision 1.1.2(3) was to restrict Choctaw from enforcing its third party contractual benefits under the Contract is preposterous. *Id*.

Furthermore, in *Oil Capital Racing Ass'n, Inc. v. Tulsa Speedway, Inc.* 1981 OK CIV APP 20, 628 P.2d 1176, the court considered a contract with similar language to Provision 1.1.2(3). The court held that because the agreement made an express benefit to a third party, the third party could enforce such benefit, notwithstanding the fact that the contract stated that "no legally enforceable right shall inure to any person…not a party to this agreement." *Id*. at 1178-1179. In so holding, the court examined why the contract contained such a clause, finding that it was likely included to ward off possible claims from other persons to whom express contractual benefits were not made. *Id*. The reasoning behind the holding in *Oil Capital* applies with even greater force to the contract between AK and CTS, where the *primary purpose of the Contract is to benefit Choctaw* by

constructing the Choctaw Town Square Development. The Oklahoma Supreme Court has recognized the owner of a premises under construction as the *primary* beneficiary of a contract between the contractor and architect, even where the owner was not identified in the contract. *See Keel v. Titan Const. Corp.*, 1981 OK 148, 639 P.2d 1228, 1231.

Here, the Contract identifies the Project by name – "Choctaw Town Square Development – and expressly provides that the Contractor covenants to "[further] the interests of the Developer." The Developer – CTS – was the authorized agent of Choctaw, as acknowledged by CTS in the Construction Agreement between CTS and Wal-Mart. *See AMF No. 1*. An agent should act in the principal's interest. *See Enter. Mgmt. Consultants, Inc. v. State ex rel. Oklahoma Tax Comm'n*, 1988 OK 91, 768 P.2d 359, 362, n.13. Thus, CTS's "interests" with respect to the Project were to further Choctaw's interests. Accordingly, Eldon Blackaby testified that CTS was acting in the interest of Choctaw. *See AMF No. 8*.

Similar to the contract in *Oil Capital*, there is no evidence here that Provision 1.1.2(3) was intended to restrict Choctaw from enforcing its express contractual rights. Thus, the Contract expressly binds AK to further Choctaw's interest with respect to the Project and therefore grants Choctaw enforceable rights under the agreement. Moreover, to preclude Choctaw from enforcing the obvious benefits it is intended to receive under the Contract would be to eviscerate the meaning behind third party beneficiary law. It would defy the logic of *Oil Capital* to permit CTS and AK to enter into an agreement that is primarily (if not solely) intended to benefit Choctaw, but simultaneously annul Choctaw's right to enforce those contractual benefits – all because the parties incorporated a document

that neither of the parties reviewed or contemplated and which is altogether inapplicable to the circumstances at hand. Therefore, the Court should deny AK's motion with respect to Choctaw's third party beneficiary breach of contract claim.[5]

**II. Tortious Breach of Contract (Choctaw's Fifth Claim for Relief).**

Finally, AK also asks the Court to dismiss Choctaw's tortious breach of contract claim. As noted by this Court in its prior order (Doc. 307), dismissing Choctaw's claims against AK for the tort of bad faith, the Oklahoma Supreme Court has limited liability for bad faith tort recovery to those involving a "special relationship." *See Embry v. Innovative Aftermarket Systems, L.P.*, 2010 OK 82, 247 P.3d 1158. The special relationship that could give rise to liability under bad faith or tortious breach of contract is limited to contracts involving "(1) a disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract, and (2) the elimination of risk." *Id.* at ¶ 7. Under that particular test, limited as it is, Choctaw concedes that it did not have a "special relationship" with AK. However, it does contend that Choctaw was a third party beneficiary to the Contract between AK and CTS, as stated *supra*.

[5] In the conclusion of AK's motion – and only in the conclusion of AK's motion – AK seeks dismissal of Choctaw's negligent breach of contract claim against AK, Choctaw's Tenth Claim for Relief. AK has failed to identify any undisputed material facts supporting the grant of summary judgment with respect to Choctaw's negligent breach of contract claim and does not otherwise offer any evidentiary support or briefing on why the Court should grant summary judgment on this claim. As stated herein, Choctaw is a third party beneficiary to the AK/CTS Contract and as such, has enforceable contractual benefits under the agreement, including the benefit of the skillful, careful, diligent, and workmanlike performance by AK of its contractual duties. Therefore, the Court should not grant summary judgment on Choctaw's negligent breach of contract claim.

### III. The Court Should not Grant Partial Summary Judgment on Choctaw's Fraud Claim (Choctaw's Eighth Claim for Relief).

Next, AK seeks partial summary judgment on a portion of Choctaw's fraud claim[6], arguing that Choctaw has failed to demonstrate that it was injured in any way by AK's noncompliance with various Oklahoma laws governing nonresident contractors.[7] AK argues that because Choctaw cannot be liable for AK's non-compliance, Choctaw has not, and cannot, identify an injury that has resulted from AK's failure to comply.

As a preliminary matter, AK has utterly failed to satisfy its obligation under Rule 56 and LCvR56.1 to "produc[e] affirmative evidence negating an essential element of the

---

[6] As discussed, AK seeks to dismiss the portion of Choctaw's fraud claim that alleges AK failed to comply with Oklahoma law as it relates to nonresident contractors. Importantly, AK ***does not*** ask the Court to grant summary judgment on Choctaw's fraud claim as it relates to AK's omission of material facts with respect to the invoices Choctaw relied upon and paid, for services purportedly rendered under the agreements involved in the Project. The different portions of Choctaw's fraud claim are illustrated in *Doc. 165*, ¶¶ 120-121.

[7] Choctaw's fraud claim, in part, alleges that CTS and AK withheld material information from Choctaw that it was obligated to disclose regarding AK's ability to perform work on the Project as a nonresident contractor. Specifically, AK failed to comply with Oklahoma statutory obligations imposed on nonresident contractors, including obligations to: (1) give written notice to the Oklahoma Tax Commission, the Oklahoma Employment Security Commission, the Workers' Compensation Court, and the Oklahoma County Assessor before commencing work or undertaking performance of contractual duties; (2) give notice to the above-listed entities of every subcontractor working on the project before the subcontractor initiates work; (3) obtain current employer identification numbers issued by the Oklahoma Tax Commission, the Oklahoma Employment Security Commission, the Internal Revenue Service, and the Social Security Administration; (4) to file with the Oklahoma Tax Commission a surety bond with a surety authorized to do business in Oklahoma in the penal sum of not less than three times the tax liability incurred or to be incurred under its contract payable to the State of Oklahoma under 68 O.S. §§ 1701.1, 1702, 1703. *AMF No. 2.* 68 O.S. §§ 1702, 1703, and 1704 make clear that these obligations are mandatory before a nonresident contractor can commence work in Oklahoma. Although §1704 has been amended since AK began work on the Project, the previous version of the statute likewise required mandatory compliance before a nonresident contractor had the right to perform work in Oklahoma.

nonmoving party's claim, or [show] that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial" (*Arabalo*, at *8-9) and to "stat[e] the material facts to which the movant contends no genuine dispute exists" (LCvR56.1). In fact, AK has *identified no undisputed material fact whatsoever* that relates to Choctaw's fraud claim or AK's argument that such claim should be dismissed. In light of AK's failure to satisfy its burden as the movant, the Court should deny AK's motion for summary judgment on this issue.

Secondly, Choctaw has indeed identified an injury based on the violations of Oklahoma law regarding nonresident contractors: Choctaw's payment of AK invoices from October, 2010 to January, 2013, in excess of $5,000,000, for AK's unlawful performance as general contractor of the Project. *AMF No. 3*. As Choctaw's City Manager, Roger Nelson, has made clear, Choctaw would not have approved the use of AK as the general contractor for the Town Square Project or paid an AK invoice had Choctaw been aware that AK had not complied with Oklahoma statutory obligations imposed on nonresident contractors working in Oklahoma, which it was required to do before performing the work. *AMF Nos. 4, 5*. And failure to do so created criminal liability for AK. *See* 68 O.S. § 1707. Regardless of Choctaw's risk of liability (or lack thereof) for AK's failures, as a subdivision of the State, Choctaw would not have knowingly chosen to use a contractor who disregarded its obligations to the State of Oklahoma to perform work, nor would it have as doing so would be inconsistent with Choctaw's contract. *Id*. Moreover, knowledge of AK's failure to comply with such Oklahoma statutory precepts would have operated as a "red flag" of sorts to Choctaw as to the fraudulent nature of AK's

business practices. *Id*. Put simply, had Choctaw been aware of AK's failures in this regard, Choctaw would not have approved AK as the contractor, and would not have been injured by paying AK by and through payment of CTS invoices. Thus, Choctaw has indeed identified a particular injury caused by AK's noncompliance with Oklahoma requirements for nonresident contractors and AK's motion must be denied with respect to this claim.

## CONCLUSION

WHEREFORE, Choctaw respectfully requests that the Court enter an order denying AK's Motion for Partial Summary Judgment with respect to Choctaw's third party beneficiary breach of contract claim, negligent breach of contract claim, and fraud claim.

*s/Grant M. Lucky*
Mark D. Coldiron, OBA#1774
Daniel G. Webber, Jr., OBA#16332
Grant M. Lucky, OBA#17398
Chance L. Pearson, OBA#22269
**RYAN WHALEY COLDIRON JANTZEN PETERS & WEBBER PLLC**
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
Email: dwebber@ryanwhaley.com

*Attorneys for Defendants/ Counterclaim Plaintiffs The City of Choctaw, Oklahoma and The Choctaw Utilities Authority*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based upon the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Richard E. Parrish - rparrish@fulkersonlawoffice.com
Jennifer A. Bruner – jbruner@fulkersonlawoffice.com
Derrick M. Davidson - dmd@davidsonbusinessattorney.com
Margaret McMorrow-Love - mcmorrowlove@sbcglobal.net
John J. Love – jjlove@productlaw.com
Randy L. Goodman - rgoodman@coxinet.net
George S. Corbyn, Jr. - gcorbyn@corbynhampton.com
Amy J. Pierce - apierce@corbynhampton.com
Andrew W. Lester - alester@lldlaw.com
Carrie L. Vaughn - cvaughn@lldlaw.com
Courtney J. Davis Powell – cpowell@lldlaw.com
David R. Cordell – dcordell@cwlaw.com
Kenneth V. Knight – knight@knightlaw.net
Charles D. Neal, Jr. – cdn@steidley-neal.com
Eric D. Janzen – edj@steidley-neal.com
William A. Hutchinson, III – ahutchinson@robertslawfirm.us
Hossein Farzaneh – hfarzaneh@lldlaw.com
Thomas G. Ferguson, Jr. - tferg@wffatty.com
Brian P. Kershaw – bkers@wffatty.com

*s/Grant M. Lucky*
Grant M. Lucky